

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00971-CV

**IN THE INTEREST OF M.C.V.**, a Child

From the 408th Judicial District Court, Bexar County, Texas
Trial Court No. 2017PA02539
Honorable Eric Rodriguez, Judge Presiding

Opinion by:      Patricia O. Alvarez, Justice

Sitting:          Patricia O. Alvarez, Justice
                 Beth Watkins, Justice
                 Liza A. Rodriguez, Justice

Delivered and Filed: May 22, 2019

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

On appeal, Dad argues the trial court erred in its December 10, 2018 order terminating his parental rights to M.C.V.[i] under Family Code section 161.002 because he was an adjudicated father to M.C.V. Because the trial court's March 22, 2019 nunc pro tunc order was void and the record conclusively establishes that Dad was an adjudicated father, the trial court erred in terminating Dad's parental rights under section 161.002. We reverse the portion of the trial court's order that terminates Dad's parental rights to M.C.V. We affirm the remainder of the trial court's December 10, 2018 order, and we remand this cause to the trial court.

---

[i] To protect the minors' identities, we refer to Appellant and the children using aliases. *See* TEX. R. APP. P. 9.8.

### BACKGROUND

In late 2017, M.C.V. and M.D.V., both too young to attend school, were removed from their parents' care based on allegations of the parents' negligent supervision. Mom and Dad denied drug abuse, but both tested positive for methamphetamines. The Department created service plans for Mom and Dad, which they signed, but each failed to comply.

### A. Trial on the Merits

On November 15, 2018, the case was tried on the merits to the bench. Mom voluntarily relinquished her rights to both children. The Department sought to terminate Dad's rights to both children on grounds (D), (E), (F), (O), and (P). *See* TEX. FAM. CODE ANN. § 161.001(b)(1). Dad opposed termination of his parental rights and argued that the Department had not produced clear and convincing evidence to meet its statutory burden.

At the close of trial, the trial court took the case under advisement; it did not orally pronounce a judgment at that time. In its December 10, 2018 written order (the original order), the trial court found that Dad was an alleged father of M.C.V., and Dad had not timely filed an admission of paternity or a counterclaim for paternity or for voluntary paternity to be adjudicated under Chapter 160. *See* TEX. FAM. CODE ANN. § 161.002(b)(1). The trial court adjudicated Dad to be M.C.V.'s father, found that terminating Dad's parental rights was in M.C.V.'s best interest, and terminated Dad's parental rights to M.C.V. under section 161.002.[ii] *See id.*

### B. Dad Appeals

Dad timely filed a notice of appeal, but he appeals with respect to only M.C.V. After the appellate record was filed, Dad filed his brief on March 5, 2019. He argues that the evidence is

---

[ii] The trial court also terminated Dad's parental rights to M.D.V., but Dad does not appeal that portion of the order.

neither legally nor factually sufficient to support the trial court's December 10, 2018 order terminating his parental rights to M.C.V. under section 161.002. *See id.*

## C.    Nunc Pro Tunc Motion

On March 15, 2019, the Department filed in the trial court a motion for nunc pro tunc. The motion asserted that the grounds for termination in the trial court's December 10, 2018 order "were not listed correctly." The trial court signed a Nunc Pro Tunc Order of Termination (the nunc pro tunc order) on March 22, 2019. The Department filed its brief—which considers the nunc pro tunc order to be the final order—and argues that the nunc pro tunc order moots Dad's sole issue.

### NUNC PRO TUNC ORDER

In this appeal, each party's brief assumes a different final order.

Dad raises legal and factual sufficiency challenges to the original order that terminated his rights to M.C.V. under section 161.002. *See id.*

The Department contends the nunc pro tunc order—which terminates Dad's rights under section 161.001(b)(1)—makes Dad's 161.002 challenge moot, and it argues the evidence was sufficient under the 161.001(b)(1) grounds. *See id.* § 161.001(b)(1).

Because the nunc pro tunc order sought to amend and replace the original order, we will first determine whether the trial court had subject matter jurisdiction to render the nunc pro tunc order. *See James v. Underwood*, 438 S.W.3d 704, 713 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Whether a trial court has subject-matter jurisdiction is a threshold inquiry that can be addressed by the court sua sponte and at any time."); *Jack Jones Hearing Ctrs., Inc. v. State Comm'n of Exam'rs in Fitting & Dispensing of Hearing Instruments*, 363 S.W.3d 911, 914 (Tex. App.—Austin 2012, no pet.) (citing *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 444–45 (Tex. 1993)) ("Subject-matter jurisdiction is never presumed and may be raised for the first time on appeal . . . *sua sponte* by a reviewing court.").

We begin with a brief review of the applicable law.

### APPLICABLE LAW, STANDARD OF REVIEW

If no postjudgment motion that extends the plenary power period is filed, a trial court has plenary power to change its judgment or order for thirty days after the final judgment or order is signed. *Lane Bank Equip. Co. v. Smith S. Equip., Inc.*, 10 S.W.3d 308, 310 (Tex. 2000) (citing TEX. R. CIV. P. 329b); *In re A.V.*, 350 S.W.3d 317, 319 (Tex. App.—San Antonio 2011, no pet.).

However, "[a]fter the trial court loses its jurisdiction over a judgment, it can correct only *clerical* errors in the judgment by judgment nunc pro tunc." *Escobar v. Escobar*, 711 S.W.2d 230, 231 (Tex. 1986) (emphasis added); *accord Andrews v. Koch*, 702 S.W.2d 584, 585 (Tex. 1986); *see also* TEX. R. CIV. P. 329b(f) ("[T]he court may at any time correct a *clerical* error in the record of a judgment and render judgment nunc pro tunc under Rule 316 . . . ." (emphasis added)). If a trial court renders an "amended order . . . to correct *judicial* error after the trial court's plenary power ha[s] expired, the amended order [is] void." *In re Elizondo*, 544 S.W.3d 824, 829 (Tex. 2018) (per curiam) (emphasis added).

"A judicial error is an error which occurs in the *rendering* as opposed to the *entering* of a judgment." *Escobar*, 711 S.W.2d at 231. "A judicial error arises from a mistake of law or fact and requires judicial reasoning or determination to correct." *Molina v. Molina*, 531 S.W.3d 211, 216 (Tex. App.—San Antonio 2017, no pet.) (citing *Cohen v. Midtown Mgmt. Dist.*, 490 S.W.3d 624, 627 (Tex. App.—Houston [1st Dist.] 2016, no pet.)). "When deciding whether a correction is of a judicial or a clerical error, we look to the judgment actually rendered, not the judgment that should or might have been rendered." *Escobar*, 711 S.W.2d at 231.

"Whether an error in a judgment is judicial or clerical is a question of law we review de novo." *In re A.M.C.*, 491 S.W.3d 62, 67 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (citing *Escobar*, 711 S.W.2d at 232).

**A.     Plenary Power Period**

The record shows the trial court signed the original order on December 10, 2018, and no postjudgment motions were filed.  Thus, the trial court lost plenary power to modify its original order on January 9, 2019.  *See* TEX. R. CIV. P. 329b; *Lane Bank*, 10 S.W.3d at 310; *Hernandez v. Lopez*, 288 S.W.3d 180, 185 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  The pivotal question here is whether the nunc pro tunc order sought to correct a clerical or a judicial error.  *See Escobar*, 711 S.W.2d at 231; *Andrews*, 702 S.W.2d at 585.

**B.     Clerical or Judicial Error**

The error in the trial court's original order was not clerical, it was judicial.  *See Molina*, 531 S.W.3d at 216; *Cohen*, 490 S.W.3d at 627.  At trial on November 15, 2018, neither side argued that Dad was merely an alleged father.  The parties understood that the trial court's December 5, 2017 temporary order had already adjudicated Dad to be M.C.V.'s father.  The Department did not seek to terminate Dad's rights based on his failure to comply with the paternity requirements.  *See* TEX. FAM. CODE ANN. § 161.002 ("Termination of the Rights of an Alleged Biological Father").  Instead, it argued that Dad's rights to M.C.V. should be terminated on grounds (D), (E), (F), (O), and (P), and it was in M.C.V.'s best interest to terminate his rights.  *See id.* § 161.001(b).

At the close of trial, the trial court did not render judgment; instead, it took the case under advisement.  *Cf. S & A Rest. Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) ("Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the clerk.").

In its December 10, 2018 written order, the trial court stated that Dad's rights to M.C.V. were terminated because Dad "did not respond by timely filing an admission of paternity or by filing a counterclaim for paternity or for voluntary paternity to be adjudicated under chapter 160 of the Texas Family Code before the final hearing in this suit."  *See* TEX. FAM. CODE ANN.

§ 161.002(b)(1). The December 10, 2018 order was the first time the trial court rendered judgment; it was "the judgment actually rendered." *See Escobar*, 711 S.W.2d at 231.

Although the trial court "should or might have" terminated Dad's parental rights to M.C.V. under the section 161.001(b)(1) grounds the Department argued at trial, *see* TEX. FAM. CODE ANN. § 161.001(b)(1), it did not. Exercising its judicial reasoning, the trial court found, albeit incorrectly, that Dad failed to comply with the statutory requirements for an alleged father. It terminated his parental rights to M.C.V. under section 161.002. *See id.* § 161.002(b)(1).

This was judicial error. *See Molina*, 531 S.W.3d at 216; *Cohen*, 490 S.W.3d at 627.

## C.   Motion for Nunc Pro Tunc

In its motion for nunc pro tunc, the Department asserted that "due to a clerical error," the grounds for termination of Dad's parental rights in the December 10, 2018 order "were not listed correctly." The Department provided the trial court with a Nunc Pro Tunc Order of Termination that terminated Dad's parental rights to M.C.V. (and M.D.V.) under section 161.001(b)(1) grounds (D), (E), (N), and (O), and the trial court signed the nunc pro tunc order on March 22, 2019.

## D.   Nunc Pro Tunc Order Void

The Department acknowledges that the original order erroneously terminated Dad's rights under section 161.002, but it argues that "[t]his was clearly a clerical mistake as the Department did not argue this ground at trial and the trial court did not terminate [Dad's] rights on this basis as reflected in [the trial court's] notes filed in the record." The Department points to the trial court's notes that, according to the Department, show the trial court intended to terminate Dad's parental rights to M.C.V. on grounds (D), (E), (N), and (O) under section 161.001(b)(1), and the nunc pro tunc order merely corrected the final order to reflect the trial court's actual intentions.

But "a judge's intention to render judgment in the future cannot be a present rendition of judgment." *Molina*, 531 S.W.3d at 216. The original order was the trial court's first rendered

judgment, and the nunc pro tunc order changed the legal grounds on which the original order terminated Dad's parental rights to M.C.V. *See* TEX. FAM. CODE ANN. §§ 161.001(b)(1) (course of conduct), .002 (alleged father). This change was not a correction of a mere clerical error in omitting a cause number, providing an incorrect date, or mistyping an amount.[iii]

Instead, the attempted correction was for the trial court's mistake of law or fact; it required the trial court to exercise its legal reasoning to review the record and the evidence adduced at trial to correct its judicial error in rendering the original order. *See Molina*, 531 S.W.3d at 216; *see also Escobar*, 711 S.W.2d at 231 ("[T]he trial court cannot [use a nunc pro tunc order to] correct a judicial error made in *rendering* a final judgment.").

Because the trial court had lost plenary power to modify its original order, and the correction was for judicial error, the trial court's nunc pro tunc order was void. *See In re Elizondo*, 544 S.W.3d at 829; *Matter of Marriage of Russell*, 556 S.W.3d 451, 457 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

### ORIGINAL ORDER

Having determined that the trial court's nunc pro tunc order was void, we now consider Dad's arguments that the evidence supporting the trial court's December 10, 2018 order—the original order—was neither legally nor factually sufficient to support termination of his parental rights to M.C.V.

### A.     Evidence Required, Standards of Review

The evidentiary standards[1] the Department must meet are well known, as are the legal[2] and factual[3] sufficiency standards of review. We apply them here.

---

[iii] *See In re N.S.*, No. 04-14-00291-CV, 2015 WL 4932850, at *4 (Tex. App.—San Antonio Aug. 19, 2015, no pet.) (mem. op.) (cause number); *Fiske v. Fiske*, No. 01-03-00048-CV, 2004 WL 1847368, at *5 (Tex. App.—Houston [1st Dist.] Aug. 19, 2004, no pet.) (mem. op.) (mistyped amount); *Traylor Bros., Inc. v. Garcia*, 949 S.W.2d 368, 369 (Tex. App.—San Antonio 1997, no writ) (incorrect date).

**B.** **Insufficient Evidence for Terminating Parental Rights**

The record conclusively establishes that the trial court adjudicated Dad to be M.C.V.'s father in its December 5, 2017 order. Dad argues, and the Department effectively concedes, that as an adjudicated father, Dad had no obligation to comply with section 161.002's alleged biological father requirements. *See* TEX. FAM. CODE ANN. § 161.002. There is no evidence to support the trial court's original order terminating Dad's parental rights to M.C.V. based on his failure to comply with section 161.002. We sustain Dad's sole issue.

**C.** **Conservatorship of M.C.V.**

The Department sought managing conservatorship of M.C.V. under section 153.131. The trial court's original order found that appointing Dad as M.C.V.'s permanent managing conservator "would significantly impair [M.C.V.'s] physical health or emotional development" and that appointing the Department as M.C.V.'s permanent managing conservator was in M.C.V.'s best interest. *See id.* § 153.131 (required findings). Thus, Dad's conservatorship challenge was not subsumed in his parental rights termination issue. *See In re D.G.*, No. 02-17-00332-CV, 2018 WL 547787, at *6 (Tex. App.—Fort Worth Jan. 25, 2018, no pet.) (mem. op.); *In re A.J.L.*, No. 04-14-00013-CV, 2014 WL 4723129, at *5 n.3 (Tex. App.—San Antonio Sept. 24, 2014, no pet.) (mem. op.) (citing *In re J.A.J.*, 243 S.W.3d 611, 615–17 (Tex. 2007)).

In Dad's brief, he prays that this court will "name Appellant a conservator of the child, M.C.V." However, Dad did not raise conservatorship as an appellate issue, present the applicable law or standard of review, or provide argument and authorities to show how the trial court abused its discretion in appointing the Department as M.C.V.'s managing conservator. *Cf.* TEX. R. APP. P. 38.1(f), (i); *Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Failure to cite legal authority or to provide substantive analysis of the

legal issues presented results in waiver of the complaint."). Thus, Dad waived his challenge to the trial court's conservatorship appointment. *See In re J.A.J.*, 243 S.W.3d at 613–14, 616–17.

Dad's conservatorship challenge was not subsumed in his parental rights termination issue, and he failed to separately challenge the trial court's conservatorship appointment. Thus, a reversal of Dad's parental rights termination does not vitiate the conservatorship appointment. *See id.*

## CONCLUSION

The trial court's December 10, 2018 order (the original order) terminated Dad's parental rights to M.C.V. based on its erroneous conclusion that Dad failed to comply with the statutory requirements for an alleged father. But the trial court had already adjudicated Dad as M.C.V.'s father. Dad had no obligation to comply with the alleged father statutory requirements. Thus, the evidence was legally and factually insufficient to support the portion of the trial court's original order that terminated Dad's parental rights to M.C.V. When the trial court attempted to correct the judicial error in its original order by its March 22, 2019 Nunc Pro Tunc Order for Termination, it had already lost plenary power, and its nunc pro tunc order was void. Therefore, the trial court's December 10, 2018 Order of Termination is the final order in the underlying suit.

Accordingly, we reverse the portion of the trial court's December 10, 2018 order that terminates Dad's parental rights to M.C.V. We affirm the remainder of the trial court's December 10, 2018 order, including the conservatorship appointment, and we remand this cause to the trial court for further proceedings consistent with this opinion and section 263.401(b-1) of the Texas Family Code.

Patricia O. Alvarez, Justice

---

[1] <u>Clear and Convincing Evidence</u>. If the Department moves to terminate a parent's rights to a child, the Department must prove by clear and convincing evidence that the parent's acts or omissions met one or more of the grounds for involuntary termination listed in section 161.001(b)(1) of the Family Code and that terminating the parent's rights is in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(b); *In re J.F.C.*, 96 S.W.3d 256, 261 (Tex. 2002).

The same evidence used to prove the parent's acts or omissions under section 161.001(b)(1) may be used in determining the best interest of the child under section 161.001(b)(2). *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002); *In re D.M.*, 452 S.W.3d 462, 471 (Tex. App.—San Antonio 2014, no pet.); *see also* TEX. FAM. CODE ANN. § 161.001(b). The trial court may consider a parent's past deliberate conduct to infer future conduct in a similar situation. *In re D.M.*, 452 S.W.3d at 472.

[2] <u>Legal Sufficiency</u>.  When a clear and convincing evidence standard applies, a legal sufficiency review requires a court to "'look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true.'" *In re J.L.*, 163 S.W.3d 79, 85 (Tex. 2005) (quoting *In re J.F.C.*, 96 S.W.3d at 266).  If the court "'determines that [a] reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true,'" the evidence is legally sufficient. *See id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

[3] <u>Factual Sufficiency</u>.  Under a clear and convincing standard, evidence is factually sufficient if "a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *In re C.H.*, 89 S.W.3d at 25; *accord In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).  We must consider "whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding." *In re J.F.C.*, 96 S.W.3d at 266; *accord In re H.R.M.*, 209 S.W.3d at 108.