

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00147-CV

———————————————

SHATARA WRIGHT, Appellant

V.

MICHAEL STEPHEN PAYNE, Appellee

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. 16-02115-211

Concurring Memorandum Opinion by Chief Justice Sudderth

**CONCURRING MEMORANDUM OPINION**

The declaratory judgment granted here was neither final nor appealable, nor does it appear from the record that the trial court thought it was. Yet the trial court signed an order that recited, "this is a Final Judgment on [Payne's] Application for Declaratory Judgment and is appealable," leading me to question whether the trial court actually read the order before signing it.

This is similar to the problem this panel identified in *In re A.S.*,[1] issued on this same date. Once again, despite the very clear standard provided to us by the Texas Supreme Court in *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 198, 205 (Tex. 2001)—which resolved the issue of finality in basic and understandable terms—and the Texas Supreme Court's recent reiteration of this standard in *In re Elizondo*, 544 S.W.3d 824, 829 (Tex. 2018) (per curiam) (orig. proceeding), the misuse of finality language in interlocutory orders persists among certain trial courts. *See, e.g., A.S.*, No. 02-18-00400-CV, slip op. at 7 (dismissing appeal when order stated, "This judgment is final and appealable," even though it was not appealable and trial judge did not intend it to be final); *In re L.T.*, No. 02-19-00161-CV, 2019 WL 3334618, at *1–2 (Tex. App.—

---

[1]No. 02-18-00400-CV, slip op. at 4–7 (Tex. App.—Fort Worth Nov. 14, 2019, no pet. h.) (mem. op.), *available at* http://www.search.txcourts.gov/Case.aspx?cn=02-18-00400-CV&coa=coa02.

Fort Worth July 25, 2019, no pet.) (per curiam) (mem. op.) (dismissing appeal of self-contradictory order entitled "Interlocutory Final[2] Order").

Although I empathize with trial court judges who often sign hundreds of orders in the course of a month, or perhaps even in a week, this does not obviate the duty for judges to hold themselves to the same standard that they expect of attorneys and parties who appear before them: to read and understand what they sign. Indeed, the practice of reading before signing is especially critical for judges because the orders that they sign affect the life, liberty, and property rights of the citizens they serve.

Furthermore, in this case, as in others, the failure of a trial judge to read an order before signing it foisted upon the parties (and the taxpayers) the burden and expense of an unnecessary appeal. This persistent problem can be avoided if trial judges simply take the time to read orders before signing them. *See A.S.*, No. 02-18-00400-CV, slip op. at 6 (noting that "[d]espite the intent of *Lehmann* to fully address the issue of finality, the problem, as evident in this case, persists.").

---

[2]"Interlocutory" and "final" are mutually exclusive terms. An interlocutory order is one that is not final. *Interlocutory*, Black's Law Dictionary (5th ed. 1979) (defining "interlocutory" as "[p]rovisional; interim; temporary; *not final*") (emphasis added). A final order is one that is not interlocutory. *Final*, Black's Law Dictionary (5th ed. 1979) (defining "final" as "[l]ast; conclusive; decisive; definitive; terminated; completed," and stating that in its use in reference to legal actions, "this word is generally *contrasted with 'interlocutory'*" (emphasis added)).

　　　　　　　　　　　　　　　　　　　　/s/ Bonnie Sudderth
　　　　　　　　　　　　　　　　　　　　Bonnie Sudderth
　　　　　　　　　　　　　　　　　　　　Chief Justice

Delivered:  November 14, 2019