# IN THE SUPREME COURT OF TEXAS

No. 18-0273

IN THE INTEREST OF R.R.K., A CHILD

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

**Argued September 19, 2019**

JUSTICE BLAND delivered the opinion of the Court.

In this case, we decide whether a memorandum order modifying possession and child support is final and appealable, rendering the trial court's later order void, and the mother's appeal untimely. Relying on a Mother Hubbard clause, the court of appeals held that the memorandum order was the final order, and it dismissed the mother's appeal for lack of jurisdiction. We conclude that the memorandum order lacks "clear and unequivocal" indicia of finality, requiring an examination of the record to determine the trial court's intent. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 205–06 (Tex. 2001); *In re Elizondo*, 544 S.W.3d 824, 827 (Tex. 2018) (per curiam). The record in this case demonstrates that neither the trial court nor the parties intended the memorandum to be the final order. Because the trial court's later "Order in Suit to Modify Parent-Child Relationship" is the appealable order, the mother's notice of appeal was timely filed. We therefore reverse.

# I

In 2014, R.R.K.'s parents obtained a court order establishing possession and support obligations for their child. A year later, R.R.K.'s father moved to modify the trial court's order, citing changed circumstances.

After a bench trial, the trial court issued a "memorandum." The one-page memorandum contains bullet-point orders modifying some aspects of the parties' possession and support obligations and removing others. A final point contained a Mother Hubbard clause, stating that "[a]ny and all relief not expressly granted is hereby DENIED."

Two days later, the father and mother signed a Rule 11 letter, prepared by the father's counsel, setting forth their agreement about possession for the upcoming Christmas holidays. *See* TEX. R. CIV. P. 11. The letter recited that the agreement was made "in anticipation of an Order being drafted."

After the holidays, the father moved for entry of a final order. The mother proposed her own final order in response. Each proposal incorporated the trial court's memorandum orders. The proposals included: (1) statutorily-required identification information; (2) required warnings that failure to comply with possession and support obligations could result in a finding of contempt; and (3) complete and specific—rather than piecemeal—possession and child support obligations, covering all periods of possession and stating the amount the father must pay. *See* TEX. FAM. CODE § 105.006.

The trial court heard the parties' motions and signed a 51-page "Order in Suit to Modify Parent-Child Relationship." From that order, both parents requested findings of fact and conclusions of law, and the mother timely filed a notice of appeal.

On appeal, no party challenged appellate jurisdiction. The court of appeals, however, *sua sponte* questioned whether it had jurisdiction and ultimately dismissed the mother's appeal as untimely.[1] The court of appeals held that the trial court's memorandum constituted a final order, reasoning that the "memorandum substantially complie[d] with the requisites of a formal judgment."[2] Concluding that the appellate deadlines ran from the date of the "memorandum," and not the trial court's later order, the court of appeals held that the mother's notice of appeal was filed more than three months too late, and it dismissed her appeal for lack of jurisdiction.[3] We granted the mother's petition for review.

## II

Under the Family Code, a party may appeal a "final order" in a suit affecting the parent-child relationship, including a final order in a modification proceeding.[4] The time for filing a notice of appeal begins to run from the date the trial court signs the final order.[5] A party seeking to appeal must file a notice of appeal within 30 days of the final order, absent an appropriate post-judgment

---

[1] *In re R.R.K.*, 581 S.W.3d 259, 260, 262 (Tex. App.—Dallas 2017).

[2] *Id.* at 262.

[3] *Id.* (citing TEX. R. APP. P. 25.1(b), 42.3(a)).

[4] TEX. FAM. CODE § 109.002(b) ("An appeal may be taken by any party to a suit from a final order rendered under this title."); *id.* § 101.032(a) ("'Suit affecting the parent child relationship' means a suit filed as provided by this title in which the appointment of a managing conservator or a possessory conservator, access to or support of a child, or establishment or termination of the parent-child relationship is requested.").

[5] *See id.* § 109.002(a) ("An appeal from a final order rendered in a suit, when allowed under this section or under other provisions of law, shall be as in civil cases generally under the Texas Rules of Appellate Procedure . . . ."); TEX. R. APP. P. 25.1, 26.1.

3

motion.[6] An appropriate and timely filed post-judgment motion extends the time for filing the notice of appeal from 30 days to 90 days.[7]

## A

The Family Code establishes specific requirements for final orders in suits affecting the parent-child relationship. Entitled "Contents of Final Order," section 105.006(a) provides that a final order in a proceeding like this one "must contain" the parties' driver's license and social security information, current home and work addresses, and telephone numbers.[8] Section 105.006(b) requires the trial court to include an order that each party notify the court, the other parties, and the state of changes in the party's identifying information, for as long as any party is obligated to pay child support or is entitled to possession or access to the child.[9]

Section 105.006(d) further provides that final orders must prominently feature statutory warnings stating the legal consequences for failing to comply with the order, and the failure to pay child support does not justify denying court-ordered possession.[10] The order must provide a

---

[6] TEX. R. APP. P. 26.1(a); *Brighton v. Koss*, 415 S.W.3d 864, 866 (Tex. 2013) ("Generally, a party must perfect its appeal by filing written notice in the trial court within thirty days after the judgment is signed.").

[7] TEX. R. APP. P. 26.1(a)(1)–(2); *Koss*, 415 S.W.3d at 866 ("[The thirty-day] deadline is extended to ninety days by the filing of certain postjudgment motions, such as a motion for new trial or a motion to modify the judgment, during that initial thirty-day window.").

[8] TEX. FAM. CODE § 105.006(a)(1)–(2).

[9] *Id.* § 105.006(b); *see also id.* § 105.006(e).

[10] *Id.* § 105.006(d). Subsection (d) provides:

> An order in a suit that orders child support or possession of or access to a child must contain the following prominently displayed statement . . . :
>
> "FAILURE TO OBEY A COURT ORDER FOR CHILD SUPPORT OR FOR POSSESSION OF OR ACCESS TO A CHILD MAY RESULT IN FURTHER LITIGATION TO ENFORCE THE ORDER, INCLUDING CONTEMPT OF COURT. A FINDING OF CONTEMPT MAY BE PUNISHED BY CONFINEMENT IN JAIL FOR UP TO SIX MONTHS, A FINE OF UP TO $500 FOR EACH VIOLATION, AND A MONEY JUDGMENT FOR PAYMENT OF ATTORNEY'S FEES AND COURT COSTS."

statutory notice to peace officers of the order's enforceability.[11] For child support orders, final orders must prominently include the circumstances in which a court may modify court-ordered child support, using language provided by the statute.[12] Section 105.006 thus provides a framework for what final orders must say in suits affecting the parent-child relationship.

---

"FAILURE OF A PARTY TO MAKE A CHILD SUPPORT PAYMENT TO THE PLACE AND IN THE MANNER REQUIRED BY A COURT ORDER MAY RESULT IN THE PARTY NOT RECEIVING CREDIT FOR MAKING THE PAYMENT."

"FAILURE OF A PARTY TO PAY CHILD SUPPORT DOES NOT JUSTIFY DENYING THAT PARTY COURT-ORDERED POSSESSION OF OR ACCESS TO A CHILD. REFUSAL BY A PARTY TO ALLOW POSSESSION OF OR ACCESS TO A CHILD DOES NOT JUSTIFY FAILURE TO PAY COURT-ORDERED CHILD SUPPORT TO THAT PARTY."

*Id.*

[11] *Id.* § 105.006(e-1). Subsection (e-1) states:

An order in a suit that provides for the possession of or access to a child must contain the following prominently displayed statement . . . :

"NOTICE TO ANY PEACE OFFICER OF THE STATE OF TEXAS: YOU MAY USE REASONABLE EFFORTS TO ENFORCE THE TERMS OF CHILD CUSTODY SPECIFIED IN THIS ORDER. A PEACE OFFICER WHO RELIES ON THE TERMS OF A COURT ORDER AND THE OFFICER'S AGENCY ARE ENTITLED TO THE APPLICABLE IMMUNITY AGAINST ANY CLAIM, CIVIL OR OTHERWISE, REGARDING THE OFFICER'S GOOD FAITH ACTS PERFORMED IN THE SCOPE OF THE OFFICER'S DUTIES IN ENFORCING THE TERMS OF THE ORDER THAT RELATE TO CHILD CUSTODY. ANY PERSON WHO KNOWINGLY PRESENTS FOR ENFORCEMENT AN ORDER THAT IS INVALID OR NO LONGER IN EFFECT COMMITS AN OFFENSE THAT MAY BE PUNISHABLE BY CONFINEMENT IN JAIL FOR AS LONG AS TWO YEARS AND A FINE OF AS MUCH AS $10,000."

*Id.*

[12] *Id.* § 105.006(e-2). Subsection (e-2) states:

An order in a suit that orders child support must contain the following prominently displayed statement . . . :

"THE COURT MAY MODIFY THIS ORDER THAT PROVIDES FOR THE SUPPORT OF A CHILD, IF:

(1) THE CIRCUMSTANCES OF THE CHILD OR A PERSON AFFECTED BY THE ORDER HAVE MATERIALLY AND SUBSTANTIALLY CHANGED; OR

(2) IT HAS BEEN THREE YEARS SINCE THE ORDER WAS RENDERED OR LAST MODIFIED AND THE MONTHLY AMOUNT OF THE CHILD SUPPORT AWARD UNDER THE ORDER DIFFERS BY EITHER 20 PERCENT OR $100 FROM THE AMOUNT THAT WOULD BE AWARDED IN ACCORDANCE WITH THE CHILD SUPPORT GUIDELINES."

*Id.*

**B**

Added to this statutory framework is our finality jurisprudence. A judicial decree is final when it disposes of all issues and all parties in the record.[13] Because a court order need not be in any particular form, "whether a judicial decree is a final judgment must be determined from its language and the record in the case."[14] When an order "finally disposes of all claims and all parties" in "clear and unequivocal language," it is a final order.[15] If, however, an order's finality is not "clear and unequivocal," then a reviewing court must examine the record to determine whether the trial court intended the order to be final.[16]

The trial court's memorandum in this case includes "Mother Hubbard" language—"a recitation that all relief not expressly granted is denied."[17] As we observed in *Lehmann*, a Mother Hubbard clause can indicate finality after a trial on the merits.[18] We also generally presume that a judgment following a conventional trial on the merits is final for purposes of appeal.[19]

But orders following a conventional trial can be ambiguous as to their finality, overcoming the presumption of finality, and in *Vaughn v. Drennon* we held that "[i]f there is any doubt as to the judgment's finality," we should review the record to determine whether the trial court intended

---

[13] *Lehmann*, 39 S.W.3d at 195.

[14] *Id.*

[15] *See Elizondo*, 544 S.W.3d at 827–28 (citing *Lehmann*, 39 S.W.3d at 195, 205–06).

[16] *Id.* at 827 (quoting *Lehmann*, 39 S.W.3d at 205–06).

[17] *Lehmann*, 39 S.W.3d at 192.

[18] *Id.* at 203–04.

[19] *Vaughn v. Drennon*, 324 S.W.3d 560, 561 (Tex. 2010) (citing *Ne. Indep. Sch. Dist. v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex. 1966)).

the order to be final, even if it was signed after a trial.[20] Our "any doubt" rule resolves disputes about finality by placing an order in its context. The right to appeal should not be "abridged by judgments that were drafted poorly or were unclear."[21]

Our finality rule before *Lehmann* was simpler: an order was final when it included "language purporting to dispose of all claims or parties." *Mafrige v. Ross*, 866 S.W.2d 590, 592 (Tex. 1993), *overruled by Lehmann*, 39 S.W.3d at 203–04. We departed from that rule in *Lehmann* because it "created more problems than it solved—confusing the lower courts, operating as a trap for unwary litigants, and consistently bringing about arguably unjust and oftentimes absurd results." *Lehmann*, 39 S.W.3d at 208 (Baker, J., concurring).

*Lehmann* therefore clarified that Mother Hubbard clauses are not a conclusive indication of finality.[22] *Lehmann*'s rule strikes a better balance. "Clear and unequivocal" language that reflects an intent to dispose of the entire case is given effect, but when there is doubt about finality, the record resolves the issue.[23]

### III

### A

A Mother Hubbard clause is not conclusive of finality when other aspects of the order render the meaning of the clause uncertain.[24] That is the case here. Unlike orders that we have

---

[20] *Id.* at 563 (examining record after trial on the merits and concluding that the parties intended the judgment to be final) (citing *Lehmann*, 39 S.W.3d at 203).

[21] *Id.* (citing *Aldridge*, 400 S.W.2d at 895).

[22] *Lehmann*, 39 S.W.3d at 206–07.

[23] *See Elizondo*, 544 S.W.3d at 827–28 (citing *Lehmann*, 39 S.W.3d at 195, 205–06).

[24] *Drennon*, 324 S.W.3d at 563 (providing that, after a trial, "[i]f there is any doubt as to the judgment's finality," then examine the "language of the decree and the record as a whole, aided on occasion by the conduct of the parties").

recognized as unmistakably final, the memorandum order in this case does not remove "any doubt" about finality.

The memorandum's bullet points belie the proposition that it is a final order because possession and support issues remained unresolved. The memorandum provides that possession be evenly split and that the Christmas and Thanksgiving holiday schedule "follow the Texas Family Code." It does not set forth this schedule, however, and otherwise lacks a disposition for possession for other holidays. It does not assign possession to one parent or the other based on any schedule. As to child support, the memorandum ordered an "offset" based on the father and mother's monthly gross incomes, but it neither calculates the parents' net resources nor states the amount of the new child support payment.

The trial court's memorandum lacks many of section 105.006's requirements for final orders and contains none of the statutorily-required warnings and advisories.[25] The courts of appeals have differed in their consideration of the effect of compliance with section 105.006 on finality, with some holding that section 105.006 plays no role in determining finality and others viewing lack of compliance as part of the overall finality analysis. We agree with the latter approach.[26] While a missing required element does not conclusively negate finality, a failure to

---

[25] *See* TEX. FAM. CODE § 105.006(a)(1)–(2) (requiring the parties' identifying information); *id.* § 105.006(d) (requiring statutory admonishment on the failure to pay child support); *id.* § 105.006(e-1) (providing for inclusion of a notice to peace officers of the order's enforceability); *id.* § 105.006(e-2) (providing for inclusion of a notice of the circumstances in which a court may modify the child support contained in the order).

[26] *Compare In re B.D.*, No. 05-17-00674-CV, 2017 WL 3765848, at *2 (Tex. App.—Dallas Aug. 31, 2017, no pet.) (mem. op.) ("Although [the memorandum] does not contain the items listed in section 105.006, those items are clerical in nature, not substantive items that would preclude the memorandum from being a final judgment."), *and In re O'Donnell*, No. 2-06-002-CV, 2006 WL 563325, at *2 (Tex. App.—Fort Worth Mar. 9, 2006, orig. proceeding) (mem. op.) ("[T]he items required to be included in a final order by Texas Family Code section 105.006 are clerical in nature, not substantive items that would preclude the 'Associate Judge's Report' from being a final judgment."), *with Dejean v. Brown*, No. 01-17-00949-CV, 2018 WL 2011668, at *1 (Tex. App.—Houston [1st Dist.] May 1, 2018, no pet.) (per curiam) (mem. op.) ("[T]his docket entry neither was memorialized as a signed order, nor is it a 'final order' under Title 5 of the Family Code because it does not contain the items required under Section 105.006 and it

include multiple required elements suggests ambiguity as to the trial court's intent. In this case, that ambiguity is not otherwise resolved on the face of the memorandum because it lacks language that it finally disposes of all claims and parties and is appealable.[27]

A failure to comply with every aspect of section 105.006 is not fatal to finality. But when finality is contested, and the order lacks required statutory elements, a reviewing court should examine the record to determine finality under *Lehmann* and its progeny.[28] Absent "clear and unequivocal" language that the memorandum disposes of all claims and all parties and is appealable, omissions of elements required by section 105.006 raise doubt about an order's finality.

The particular Mother Hubbard language in this case does not conclusively establish finality because it does not state that the memorandum (1) is a final order; (2) disposes of all claims and parties; and (3) is appealable.[29] In contrast, the order in *Elizondo* removed all doubt, stating: "This judgment is final, disposes of all claims and all parties, and is appealable. All relief not granted herein is denied."[30]

---

does not state that it disposes of all parties and claims."), *Qutiefan v. Safi*, No. 01-17-00925-CV, 2018 WL 1189667, at *1 (Tex. App.—Houston [1st Dist.] Mar. 8, 2018, no pet.) (per curiam) (mem. op.) ("[T]his is not a 'final order' under Title 5 of the Family Code because it does not contain the several items required under Section 105.006 and it does not state that it disposes of all parties and claims."), *Tramel v. Tramel*, No. 01-10-00713-CV, 2012 WL 3775971, at *2 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, no pet.) (mem. op) ("The July 2009 Ruling contains none of [section 105.006's] requirements, but all are present in the May 2010 Decree. The latter document also contains a Mother Hubbard clause and approval as to both form and substance executed by counsel to both parties."), *and In re S.D.M.*, No. 04-03-00905-CV, 2005 WL 1224696, at *2 (Tex. App.—San Antonio May 25, 2005, no pet.) (mem. op.) ("In contrast to the Rule 11 agreement, the divorce decree . . . disposes of all parties and claims pending before the court, and contains all of the mandated provisions of a final judgment in a suit affecting the parent-child relationship. . . . Based on the record, we conclude that the divorce decree . . . constitutes the final judgment in the case.").

[27] *See Lehmann*, 39 S.W.3d at 206; *Drennon*, 324 S.W.3d at 563.

[28] *See Lehmann*, 39 S.W.3d at 192, 205–06; *Drennon*, 324 S.W.3d at 563.

[29] *See Lehmann*, 39 S.W.3d at 206.

[30] *Elizondo*, 544 S.W.3d at 825.

9

The father contends that consideration of the Family Code requirements will subject final orders to collateral attack when they fail to include a section 105.006 required element. The risk of collateral attack would not be ameliorated with a different rule—a longstanding "final order" could be equally challenged as void in favor of an earlier, incomplete order. The presumption of finality after a conventional trial still governs, and a record that fails to reveal the trial court's intent that the order be interim and not final will not rebut that presumption.[31] Finally, interim orders, while not final, are nonetheless enforceable.[32]

The father also contends that the Family Code's contempt provision, which allows a trial court to clarify an order that "is not specific enough to be enforced by contempt" without affecting finality, cures finality defects. This cure provision does not answer, however, whether an order is final in the first instance and does not preclude a determination that an incomplete order lacks finality.[33]

Because the memorandum order in this case does not contain "clear," "unequivocal," and "unmistakable" indicia of finality, removing "any doubt" about its effect, we examine the record to determine the trial court's intent.[34] Rather than examining the record, the court of appeals relied

[31] *See Drennon*, 324 S.W.3d at 563.

[32] *See* TEX. FAM. CODE § 105.001(f) ("The violation of a temporary restraining order, temporary injunction, or other temporary order rendered under this section is punishable by contempt and the order is subject to and enforceable under Chapter 157.").

[33] *See id.* § 157.421.

[34] *See Bison Bldg. Materials, Ltd. v. Aldridge*, 422 S.W.3d 582, 585 (Tex. 2012) ("A judgment is final for purposes of appeal 'if and only if either it actually disposes of all claims and parties then before the court, regardless of its language, or it states with unmistakable clarity that it is a final judgment as to all claims and all parties.'" (quoting *Lehmann*, 39 S.W.3d at 192–93)); *Drennon*, 324 S.W.3d at 563 ("If there is any doubt as to the judgment's finality, then '[f]inality must be resolved by a determination of the intention of the court [as] gathered from the language of the decree and the record as a whole, aided on occasion by the conduct of the parties.'" (quoting *Lehmann*, 39 S.W.3d at 203)).

on a seven-factor test to conclude that the order was final.[35] Each of these indicators, however, is an attribute of both interim and final orders; the list does not meaningfully distinguish between the two.[36] When in doubt, the record provides that help.[37]

B

For this case, the rest of the record resolves the question. After the court issued its one-page memorandum, the parties entered into a Rule 11 agreement memorializing the parties' understanding of possession during the Christmas holidays. The letter was "prepared in anticipation of an Order being drafted." The parties exchanged draft orders and later moved to enter an order conforming with, but adding to, the memorandum order's possession and child support obligations.

After conducting a hearing on the parties' respective motions for entry of a final order, the trial court issued a 51-page "Order in Suit to Modify Parent-Child Relationship" that contained the parties' personal information and included section 105.006's statutory admonishments. Unlike the memorandum, this order assigns possession and details its beginning and end dates, and it denotes which parent has possession during holidays other than Christmas, Thanksgiving, and for the

---

[35] These seven factors were:

> (1) it describes the decision with certainty as to parties and effect; (2) it requires no further action to memorialize the ruling; (3) it contains the name and cause number of the case; (4) the court's diction is affirmative rather than anticipatory of a future ruling; (5) it bears a date; (6) it was signed by the court; and (7) it was filed with the district clerk.

*See In re R.R.K.*, 581 S.W.3d 259, 261 (Tex. App.—Dallas 2017) (citing *In re CAS Cos., LP*, 422 S.W.3d 871, 875 (Tex. App.—Corpus Christi-Edinburg 2014, orig. proceeding)).

[36] These factors can be useful when determining whether a trial court's written directive, like a letter to counsel, constitutes an effective judgment or order. *See e.g., In re Newby*, 266 S.W.3d 557, 558–59 (Tex. App.—Amarillo 2008, orig. proceeding) (per curiam) (noting that "[i]n general, letters from the court to counsel are not the type of documents that constitute a judgment, decision or order," but holding that substantial compliance with the requisites of a formal order can render the letter an effective order).

[37] *Drennon*, 324 S.W.3d at 563 (citing *Lehmann*, 39 S.W.3d at 203).

summer. It provides that either parent must notify the other when choosing not to exercise a period of possession. It calculates each party's total net resources after subtracting taxes, sets forth the amount of contribution to the child's health insurance costs, and states the net monthly child support to be paid by the father. The last paragraph states: "IT IS ORDERED that all relief requested in this case and not expressly granted is denied. All other terms of the prior orders not specifically modified in this order shall remain in full force and effect." The record reveals that no one—not the trial court and not the parties—intended the earlier memorandum to be the "final" order.

We hold that an order lacking the unmistakable language of finality—that it resolves all claims between and among all parties and is final and appealable—is ambiguous in a suit under the Family Code when the order does not comport with the statute governing final orders and is otherwise inconclusive as to its intent. If a judicial decree's finality is ambiguous, a reviewing court should examine the record to determine the trial court's intent. Because the record in this case reveals that the trial court's later order was the final order, the mother's appeal was timely filed.

We reverse and remand to the court of appeals for consideration of the merits of the mother's appeal.

_____
Jane N. Bland
Justice

**OPINION DELIVERED:** December 13, 2019