

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-21-00449-CV

_____

IN THE INTEREST OF A.R. AND A.R., CHILDREN

_____

On Appeal from the 467th District Court
Denton County, Texas
Trial Court No. 15-10810-16

_____

Before Kerr, Birdwell, and Womack, JJ.
Memorandum Opinion by Justice Womack

## MEMORANDUM OPINION

## I. INTRODUCTION

This appeal concerns a suit affecting the parent–child relationship (SAPCR) involving Appellant G.M. (Mother), Appellee M.R. (Father), and their two children, A.R. and A.R. (collectively, the Children). In two issues, Mother complains about a final order entered in the SAPCR following a two-day trial in May 2021 (the 2021 Order) and an order sealing the reporter's record of an interview between the trial court[1] and the Children (the Sealing Order). In her first issue, Mother argues that the 2021 Order is void because a final order had already been signed in the SAPCR, referring us to an order signed in March 2018 (the 2018 Order).[2] In her second issue, Mother complains that the Sealing Order is void and that the trial court abused its discretion by signing the Sealing Order.

As to Mother's first issue, we will hold that the 2018 Order is not a final order because it does not state with unmistakable clarity that it is a final order as to all claims and all parties and because, regardless of its language, it does not actually dispose of all claims and parties. As to Mother's second issue, we will hold that the Sealing Order is not void, that the trial court did not abuse its discretion by entering it,

---

[1]This SAPCR originally proceeded in the 16th District Court of Denton County; it was later transferred to the 462nd District Court of Denton County; and it was ultimately transferred to the 467th District Court of Denton County. We will refer to the 467th District Court—the court that presided over the two-day trial and that entered the 2021 Order and the Sealing Order—as the "trial court."

[2]The 2018 Order was signed by the presiding judge of the 16th District Court.

and that even if the trial court had abused its discretion, Mother has not demonstrated harm. We will thus affirm.

## II. BACKGROUND

### A. Mother and Father Divorce, and Mother Seeks to Modify the Divorce Decree

In 2016, Mother and Father divorced in the underlying SAPCR. At that time, the SAPCR was litigated in the 16th District Court of Denton County. Pursuant to the divorce decree, Mother and Father were appointed joint managing conservators of the Children, with Mother having the exclusive right to designate the Children's primary residence, and Father being ordered to pay child support to Mother.[3]

In 2017, Mother filed a petition seeking to modify the 2016 divorce decree. Through her petition, Mother sought, among other things, to modify Father's child-support obligations, to modify the geographic area in which the Children's primary residence could be maintained, and to order Father to pay Mother's attorney's fees. Father answered Mother's petition and sought his attorney's fees.

A month after Father answered Mother's petition, Father and Mother signed a "Mediated Settlement Agreement on Temporary Orders" (the Settlement Agreement on Temporary Orders). Pursuant to the Settlement Agreement on Temporary Orders, Father's child-support obligations were discontinued, Mother was only

---

[3]Mother and Father both signed the divorce decree, acknowledging that they "approved and consented to [the decree] as to both form and substance."

3

allowed supervised periods of possession with the Children, and the parties agreed to a child-custody evaluation.

## B. The 2018 Order

In March 2018, after considering the Settlement Agreement on Temporary Orders, the presiding judge of the 16th District Court signed the 2018 Order. The 2018 Order was titled "Agreed Order for Termination of Child Support Payments." The 2018 Order—which Mother now contends is a final order—states:

On this day, the Court considered the agreement of the parties on the termination of child support and the recovery of child support payments made in excess of the child support order.

### 1. *Appearances*

[Mother] did not appear in person but has agreed to the terms of this order as evidenced by [her] signature below.

[Father] has agreed to the terms of this order as evidenced by [his] signature appearing below.

### 2. *Jurisdiction*

The Court, after examining the record and the agreement of the parties and hearing the evidence, finds that all necessary prerequisites of the law have been legally satisfied and that the Court has jurisdiction of this case and of all the parties.

### 3. *Record*

A record of the testimony was waived with the consent of the Court.

4

### 4. *Findings*

The Court finds that [Father] is not in arrears and that [Father's] obligation to pay child support to [Mother] has terminated, pursuant to the [Settlement Agreement on Temporary Orders] signed by the parties on November 28, 2017.

### 5. *Judgment*

IT IS ORDERED that [Father's] obligation to pay child support was terminated on November 28, 2017.

### 6. *Relief Not Granted*

IT IS ORDERED that all relief requested in this case and not expressly granted is denied.

The 2018 Order contains the signature of the presiding judge of the 16th District Court, along with the signatures of the parties' respective attorneys under a heading stating, "Approved as to Form Only."

The same day that the 2018 Order was signed, the presiding judge of the 16th District Court also signed an "Order for Child Custody Evaluation." That order appointed a child custody evaluator, required the parties to contact the child custody evaluator within ten business days of the order, and ordered the child custody evaluator to conduct an evaluation regarding the custody of the Children and prepare a report regarding his findings.

## C. The SAPCR Moves Toward Trial Following the 2018 Order, and the 2021 Order is Signed After a Two-Day Bench Trial

In January 2019, the SAPCR was transferred from the 16th District Court to the 462nd District Court. In April 2019—over a year after the 2018 Order was

signed—Mother filed a "Motion for Pre-Trial Conference" in the SAPCR, in which she requested that the 462nd District Court "set this matter for a Pre-Trial Conference for the purpose of scheduling a final trial date and issuing a Discovery Control Plan and Scheduling Order." In September 2019, Mother filed a motion to modify the scheduling order and discovery control plan, and in October 2019, Mother requested a jury trial.

In March 2020, Father filed a counterpetition to modify the 2016 divorce decree. Father requested, among other things, that Mother be ordered to pay him child support and that he be given the rights and duties of a sole managing conservator, contending that Mother had engaged in "a history or pattern of child neglect/abuse." Mother filed a general denial to Father's counterpetition and later filed an amended petition to modify.

In January 2021, the SAPCR was transferred from the 462nd District Court to the 467th District Court. In May 2021, the 467th District Court conducted a two-day bench trial in the SAPCR. The trial court ultimately signed the 2021 Order following trial. The 2021 Order modified Mother and Father's divorce decree, and it ordered, among other things, that Mother pay Father child support, that Mother and Father remain joint managing conservators of the Children, and that Father have the exclusive right to designate the Children's primary residence within certain counties. Mother appeals from the 2021 Order.

## D. The Sealing Order

Nine months before trial, Mother filed a "Motion for Judge to Confer with Children," in which she requested that the trial judge "confer with [the Children], in chambers, to determine the [C]hildren's wishes as to which parent shall have the exclusive right to designate the [C]hildren's primary residence and the [C]hildren's wishes regarding each party's possession of and access to the [C]hildren."[4] Later, at the trial's conclusion, the trial court granted Mother's request to interview the Children. Father's counsel requested that a record be made of the interview, and the trial court indicated that a court reporter would be present for the interview. The trial court later interviewed the Children in chambers, and a reporter's record was made of the interview.

On July 6, 2021, Mother filed a motion requesting that the trial court order the court reporter to release a copy of the reporter's record of the trial court's interview of the Children.[5] On July 9, 2021—three days after Mother filed her motion to release the reporter's record—the trial court signed the Sealing Order. The Sealing Order states, in pertinent part, "The Court finds that good cause exist[s] to seal the Court's record/Court Reporter's record of the Court's interview with the [C]hildren.

---

[4]The month before trial, Mother filed an "Amended Motion for Judge to Confer with Children," again requesting that the trial judge interview the Children in chambers.

[5]A docket entry from May 17, 2021—the date the trial court interviewed the Children—states, "Court interviewed both children. Record sealed."

Therefore, the Court ORDERS that the Court's Record/Court Reporter's record of the Court's interview with the [Children] shall be sealed." In October 2021, following a hearing on Mother's motion to release the reporter's record of the trial court's interview with the Children, the trial court denied Mother's motion.

While the case was pending on appeal, Mother's attorney moved that we release the reporter's record of the trial court's interview with the Children to Mother's attorney. We granted the motion, allowing Mother's attorney to obtain a copy of the reporter's record of the interview provided that he sign an affidavit in which he agreed to abide by the Sealing Order and that he would "not reveal the contents of these records to any person not authorized by the court." Mother's attorney later signed the affidavit and checked out the reporter's record of the interview.

## III. DISCUSSION

### A. Mother's Complaint that the 2021 Order is Void Because of the 2018 Order

In her first issue, Mother argues that the 2021 Order is void because the 2018 Order was a final order, and, therefore, the trial court's plenary power had expired by the time it signed the 2021 Order.

#### 1. Standard of Review

Whether an order is final impacts jurisdiction and is a legal question we review de novo. *Shetwey v. Mediation Inst. of N. Tex., LLC*, 624 S.W.3d 285, 287 (Tex. App.—

8

Fort Worth 2021, no pet.); *Redwine v. Pekinpaugh*, 535 S.W.3d 44, 48 (Tex. App.—Tyler 2017, no pet.).

## 2. We Reject Father's Argument that Mother has Waived Her First Issue and Should Be Estopped from Bringing Her First Issue

As a preliminary matter, we will briefly address Father's argument that Mother has waived her first issue and should be estopped from bringing her first issue. Mother's first issue implicates the trial court's subject-matter jurisdiction because Mother contends that the 2021 Order was signed after the trial court had lost plenary power. *See Tex. Dep't of Pub. Safety v. LaRoussi*, 192 S.W.3d 637, 640 (Tex. App.—Tyler 2006, no pet.) ("Orders issued after the expiration of a trial court's plenary power are void for lack of subject[-]matter jurisdiction."). Subject-matter jurisdiction cannot be waived and can be raised at any time. *Alfonso v. Skadden*, 251 S.W.3d 52, 55 (Tex. 2008); *City of Fort Worth v. Shilling*, 266 S.W.3d 97, 105 n.6 (Tex. App.—Fort Worth 2008, pet. denied). Accordingly, we reject Father's argument that Mother has waived her first issue.

Father also argues that Mother should be estopped from bringing her first issue. But just as subject-matter jurisdiction cannot be waived, it also cannot be conferred by estoppel. *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001); *Comptroller v. Landsfeld*, 352 S.W.3d 171, 174 (Tex. App.—Fort Worth

9

2011, pet. denied). Accordingly, we reject Father's argument that Mother should be estopped from bringing her first issue.[6]

### 3. The Law Regarding Finality

As a general rule, only one final judgment may be rendered in any case. *See* Tex. R. Civ. P. 301. The entry of a second judgment does not automatically vacate the first judgment, and if there is nothing in the record to show that the first judgment was vacated, the second judgment is a nullity. *Thompson v. Ballard*, 149 S.W.3d 161, 166 (Tex. App.—Tyler 2004, no pet.); *Exxon Corp. v. Garza*, 981 S.W.2d 415, 419 (Tex. App.—San Antonio 1998, pet. denied).

Absent a conventional trial on the merits, a judgment is final if it either (1) states with unmistakable clarity that it is a final judgment as to all claims and all parties or (2) actually disposes of all claims and parties then before the court,

---

[6]Father also contends that Mother has inadequately briefed her appellate complaints, pointing out that the argument section of Mother's brief "only makes a single reference to . . . either the clerk's or reporter's record." Texas Rule of Appellate Procedure 38.1(i) requires an appellate brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Failure to comply with Rule 38.1(i) may result in waiver of an appellate claim, yet we must construe the Texas Rules of Appellate Procedure "reasonably, yet liberally, so that the right to appeal is not lost by imposing requirements not absolutely necessary to enforce the rules." *Fed. Corp., Inc. v. Truhlar*, 632 S.W.3d 697, 725 (Tex. App.—El Paso 2021, pet. denied). Here, while the argument section of Mother's brief contains scant citation to the record, we note that the statement-of-facts section of Mother's brief contains many citations to the record. In any event, we have had no difficulty identifying the pleadings and orders that control this appeal, and in the interest of justice, we will consider Mother's complaints on their merits. *See Bolanos v. Purple Goat, LLC*, 649 S.W.3d 753, 758 (Tex. App.—El Paso 2022, no pet.) (addressing an appellate complaint in the interest of justice despite party's inadequate brief that lacked appropriate record citations).

10

regardless of its language. *Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 192–93 (Tex. 2001). In determining whether an order is a final judgment, we should first examine the language of the order itself. *In re Elizondo*, 544 S.W.3d 824, 827–28 (Tex. 2018) (orig. proceeding) (citing *Lehmann*, 39 S.W.3d at 195, 205–06); *In re M & O Homebuilders, Inc.*, 516 S.W.3d 101, 106 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding). If the order does not clearly and unequivocally indicate finality, we then look at the record to determine finality. *Elizondo*, 544 S.W.3d at 827–28; *M & O Homebuilders, Inc.*, 516 S.W.3d at 106.

Although no "magic language" renders a judgment final, "a trial court may express its intent to render a final judgment by describing its action as (1) final, (2) a disposition of all claims and parties, and (3) appealable." *Bella Palma, LLC v. Young*, 601 S.W.3d 799, 801 (Tex. 2020). Examples of clear and unequivocal finality language include: "This judgment finally disposes of all parties and all claims and is appealable," *Lehmann*, 39 S.W.3d at 206, and "This judgment is final, disposes of all claims and all parties, and is appealable," *Elizondo*, 544 S.W.3d at 825.

#### 4. Analysis

##### a. The 2018 Order Does Not Contain Clear and Unequivocal Finality Language

Mother argues that finality is clear and unequivocal on the face of the 2018 Order. We disagree. The 2018 Order does not contain any language indicating that it is a final and appealable disposition of all claims and parties. *See Bella Palma, LLC*, 601

11

S.W.3d at 801. While no "magic language" is required, nothing in the 2018 Order comes close to the examples offered in *Elizondo* and *Lehmann* to indicate finality. *See Elizondo*, 544 S.W.3d at 825 ("This judgment is final, disposes of all claims and all parties, and is appealable."); *Lehmann*, 39 S.W.3d at 206 ("This judgment finally disposes of all parties and all claims and is appealable.").

To support her argument regarding finality, Mother points to the fact that (1) the parties agreed to the order, (2) the order contained a jurisdictional statement, (3) the order reflected that the parties had waived a record, (4) the order stated that Father's obligation to pay child support had terminated, (5) the order had a heading called "Judgment," and (6) the order included a Mother Hubbard clause stating that "all relief requested in this case and not expressly granted is denied." But none of these facts, even when taken together, gives unmistakable clarity regarding whether the 2018 Order is final. Parties can agree to interlocutory orders just as they can agree to final judgments; interlocutory orders can contain jurisdictional statements; and parties can waive a record of a hearing on an interlocutory order. And while the 2018 Order references the termination of Father's child-support obligations, it only does so by referring to the parties' Settlement Agreement on Temporary Orders.

Moreover, the mere heading called "Judgment" in the 2018 Order does not indicate finality. *See Lehmann*, 39 S.W.3d at 205 ("An order does not dispose of all claims and all parties merely because it is entitled 'final', or because the word 'final' appears elsewhere in the order."); *Jesse James Fitness, LLC v. Stiles*, No. 02-19-00417-

12

CV, 2020 WL 827605, at *1 (Tex. App.—Fort Worth Feb. 20, 2020, no pet.) (mem. op.) ("Including the word 'final' in the title or elsewhere in the order, awarding costs, or stating that the order or judgment is appealable is not necessarily language of sufficient clarity to make it final for purposes of appeal."). As to the Mother Hubbard clause's inclusion, the Texas Supreme Court has held that "the inclusion of a Mother Hubbard clause . . . does not indicate that a judgment rendered without a conventional trial is final for purposes of appeal." *Lehmann*, 39 S.W.3d at 203–04. The Texas Supreme Court has reasoned that Mother Hubbard clauses give no indication of finality because they are "used in interlocutory orders so frequently" and because they are "inherently ambiguous." *Id.* at 204, 206.

The 2018 Order's failure to include certain information required by Family Code Section 105.006 further indicates that the 2018 Order lacks finality. Section 105.006 "establishes specific requirements for final orders in suits affecting the parent[–]child relationship." *In re R.R.K.*, 590 S.W.3d 535, 539 (Tex. 2019). Final orders in such cases must contain, among other things, the social security number and driver's license number of each party to the suit; each party's current residence address, mailing address, home telephone number, name of employer, address of employment, and work telephone number; and certain statutory warnings stating the legal consequences for failing to comply with the order. Tex. Fam. Code Ann. § 105.006(a), (d), (e). While "[a] failure to comply with every aspect of [S]ection 105.006 is not fatal to finality[,]" when finality is contested, and the order lacks required

13

statutory elements, a reviewing court should examine the record to determine finality under *Lehmann* and its progeny." *R.R.K.*, 590 S.W.3d at 542. Indeed, "omissions of elements required by [S]ection 105.006 raise doubt about an order's finality." *Id.* at 542–43.

Based on our de novo review of the face of the 2018 Order, we hold that the 2018 Order does not state with unmistakable clarity that it is a final and appealable order as to all claims and all parties. *See Bella Palma, LLC*, 601 S.W.3d at 801; *Lehmann*, 39 S.W.3d at 192–93.

### b. The Record Does Not Demonstrate That the 2018 Order is Final

Because the 2018 Order does not contain unambiguous language of finality, we next examine the record to determine whether every pending claim and party was disposed of when the 2018 Order was signed. *See Elizondo*, 544 S.W.3d at 827–28; *M & O Homebuilders, Inc.*, 516 S.W.3d at 106.

While Mother candidly admits that "the record demonstrates . . . that neither the parties nor the trial court intended the [2018 Order] to be final," she argues that "their intent is not the inquiry" and that the record supports finality. We disagree with Mother's contention that the record supports finality. Here, on the same day that the presiding judge of the 16th District Court signed the 2018 Order, the same judge signed an "Order for Child Custody Evaluation." That order contemplated future steps to be taken by both the parties and the child custody evaluator in the

14

case. More importantly, the SAPCR continued for more than three years, culminating in a two-day bench trial. During those years, Father filed his counterpetition to modify the divorce decree, Mother filed an amended petition to modify, and the case was transferred to other district courts.

Mother also took steps to move the case toward trial, including requesting a pre-trial conference, requesting the modification of a scheduling order and discovery control plan, and requesting a jury trial. If the 2018 Order disposed of every claim and party, as Mother now contends, none of these steps would have been necessary, nor would there have been the need for a trial in 2021. *See Vaughn v. Drennon*, 324 S.W.3d 560, 563 (Tex. 2010) ("When the Vaughns did not receive notice of the signed judgment, they filed a motion to extend the period for filing a motion for new trial and notice of appeal . . . , which the trial court granted. Such a motion would not be necessary, nor would it be granted, were the judgment not believed to be final by both the Vaughns and the trial court.").

Based on our de novo review of the record, we hold that the 2018 Order did not actually dispose of all claims and parties then before the court. *See Lehmann*, 39 S.W.3d at 192–93. We thus overrule Mother's first issue.

## B. Mother's Complaint Regarding the Sealing Order

In her second issue, Mother complains that the Sealing Order is void and that the trial court abused its discretion by signing the Sealing Order.

### 1. The Sealing Order is Not Void

Harking back to her first issue, Mother claims that the Sealing Order is void because the 2018 Order is a final order, and, therefore, the trial court lost its plenary power in 2018 to make other orders, such as the Sealing Order. But we have already determined that the 2018 Order is not a final order, and we thus overrule this aspect of Mother's second issue.

Mother next complains—in two sentences—that even if we determine that the 2018 Order is not a final order, the Sealing Order is still void because it was not included in the 2021 Order. According to Mother, this somehow violates the "one final order rule." *See* Tex. R. Civ. P. 301 ("Only one final judgment shall be rendered in any cause except where it is otherwise specially provided by law."). But Mother provides no authority or explanation for her proposition that the failure to include the Sealing Order in the 2021 Order somehow violates the "one final order rule," and we have found none. To the contrary, Texas law makes clear that the Sealing Order was merged into and subsumed by the 2021 Order. *See Ford v. Ruth*, No. 03-14-00460-CV, 2016 WL 1305209, at *3 (Tex. App.—Austin Mar. 31, 2016, pet. denied) (mem. op.) ("When a final judgment resolves all claims in a case, any previous interlocutory judgment or order is merged into that final judgment."); *Toles v. Toles*, 113 S.W.3d 899, 914 (Tex. App.—Dallas 2003, no pet.) ("All prior interlocutory orders of the divorce court were merged into and subsumed by the final judgment."), *abrogated on other*

16

*grounds by Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477 (Tex. 2015). We thus overrule this aspect of Mother's second issue.

### 2. The Trial Court Did Not Abuse Its Discretion by Signing the Sealing Order, and Even if It Did, Mother Has Not Demonstrated Harm

Mother next complains that even if the Sealing Order is not void, the trial court abused its discretion[7] and denied her due process by entering the Sealing Order sua sponte without a hearing and with no party being given the opportunity to contest it. We note, however, that Mother filed a motion requesting that the trial court order the trial court reporter to release a copy of the reporter's record of the trial court's interview of the Children. And a hearing was later held on that motion, and the trial court denied it. Thus, we cannot say that the trial court abused its discretion or that Mother was denied due process with respect to the Sealing Order.

Even if the trial court abused its discretion with respect to the Sealing Order, Mother has not demonstrated harm. To obtain reversal of a judgment based on an error in the trial court, an appellant must show that the error occurred and that it probably caused rendition of an improper judgment or probably prevented the appellant from properly presenting the case to this court. Tex. R. App. P. 44.1(a); *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212, 225 (Tex. 2005). Here, Mother has offered no proof or argument indicating that she has been harmed by the Sealing

---

[7]We review a trial court's sealing decisions for an abuse of discretion. *Witt v. Michelin N. Am., Inc.*, No. 02-18-00390-CV, 2020 WL 5415228, at *9 (Tex. App.—Fort Worth Sept. 10, 2020, no pet.) (mem. op.).

17

Order, and we gave Mother's counsel the opportunity to review the reporter's record of the trial court's interview with the Children prior to the due date for Mother's brief, an opportunity that Mother's counsel accepted. Despite that opportunity, Mother has not shown any harm to her from the Sealing Order. Thus, based on our review of the record, even if the trial court abused its discretion with respect to the Sealing Order, we cannot conclude that such abuse of discretion caused harm and resulted in an improper judgment. *See also In re Marriage of Comstock*, 639 S.W.3d 118, 135 (Tex. App.—Houston [1st Dist.] 2021, no pet.) (concluding that trial court's error in failing to ensure the recording of its interviews with children was harmless, noting the trial court's "broad discretion in making conservatorship and possession determinations" and stating the trial court "may choose to either take into account the information learned at such an interview . . . or ignore it in its entirety") (internal quotations omitted). We thus overrule Mother's second issue in its entirety.[8]

## IV. CONCLUSION

Having overruled Mother's two issues, we affirm the trial court's 2021 Order.

---

[8]Mother also asks us to clarify the Sealing Order, contending that our order authorizing her counsel to check out the reporter's record of the trial court's interview of the Children and to "not reveal the contents of these records to any person not authorized by the court" added "extreme uncertainty as to what the [S]ealing [O]rder even does." We decline Mother's invitation to clarify the Sealing Order, as we are prohibited from issuing advisory opinions. *See Tex. Ass'n of Bus. v. Tex. Air. Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (noting that "[t]he distinctive feature of an advisory opinion is that it decides an abstract question of law without binding the parties" and that "Texas courts . . . have no jurisdiction to render such opinions").

18

/s/ Dana Womack

Dana Womack
Justice

Delivered:  November 23, 2022