# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-25-00931-CV

### In re B. W. A. and A. R-A.

---

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

---

## O P I N I O N

In this child-access dispute, we determine whether a mediated settlement agreement (MSA) conferred standing on biological grandparents to seek access to children who were adopted following their biological father's death and termination of their biological mother's parental rights. Because the trial court did not enter an order on the MSA while it retained plenary power, we conclude that the MSA could not confer standing on the biological grandparents. We therefore conditionally grant mandamus relief.

## BACKGROUND[1]

Relators are the adoptive parents of two minor children. Relators filed their petition for adoption in June 2017, at which point the children had been living in their home for

---

[1] The background is based on the records in this case and on the records filed in *In re Robinson*, 03-26-00022, a related mandamus involving the same parties and underlying dispute. *See Tschirhart v. Tschirhart*, 876 S.W.2d 507, 508 (Tex. App.—Austin 1994, no writ) ("[A] court may take judicial notice of its own records."); *see also* Tex. R. Evid. 201 (addressing judicial notice); *Humphries v. Humphries*, 349 S.W.3d 817, 820, n.1 (Tex. App.—Tyler 2011, pet. denied) (appellate court may take judicial notice of its own records in same or related proceeding involving same or nearly same parties).

at least six months. The children were two years old and four years old at the time the petition was filed. Their biological father died before the younger child was born. The real parties in interest are the children's biological paternal grandmother Debbie Robinson and biological maternal grandparents David and Nancy Weldon (collectively, "the grandparents"). In August 2017, Relators, the grandparents, and the children's biological mother (Mother) signed an MSA, with attorneys for the adoptive parents and maternal biological grandparents present, as well as a court-appointed guardian ad litem for the children present. The MSA provided:

> 3. [Mother] will sign an Irrevocable Affidavit of Relinquishment of Parental Rights to the child. and will deliver that Affidavit to [Relators] no later than August 18, 2017.
>
> . . .
>
> 7. Immediately following entry of the Order Granting Adoption, Debbie Robinson, Nancy Weldon, David Weldon, and [Relators] shall file a Joint Petition for Grandparent Access, and will seek an Agreed Final Order with the terms and conditions contained herein:
>
>> a. Nancy and David Weldon shall have possession of the children as agreed by Nancy and David Weldon and [Relators]. And failing agreement, one weekend per quarter of each year. The following terms and conditions shall apply to each period of possession:
>>
>>> i. The location of each such visit shall be by agreement of the Weldons and [Relators], and failing agreement, [Relators] will select a family friendly location within 100 miles of Austin, Texas.
>>>
>>> ii. [At least one of the Relators] shall be present during these periods of possession of the children to facilitate the [older child's] attachment therapy.

2

iii. The Weldons shall give 30 days' notice of their intended date of visitation for each quarter.

iv. [Relators] will send regular picture and letter updates to the Weldons.

v. [Relators] will facilitate facetime and/or skype calls between the Weldons and the children one time per month.

vi. [Mother] may attend these visits as agreed in advance, in writing, by [Relators].

b. Debbie Robinson shall have possession of the children as agreed Debbie Robinson and [Relators], and failing agreement, one weekend per quarter of each year. The following terms and conditions shall apply to each period of possession:

i. The location of each such visit shall be by agreement of Debbie Robinson and [Relators], and failing agreement, [Relators] will select a family friendly location within 100 miles of Austin, Texas.

ii. [At least one of the Relators] shall be present during these periods of possession of the children to facilitate the [older child's] attachment therapy.

iii. Debbie Robinson shall give 30 days' notice of their intended date of visitation for each quarter.

iv. [Relators] will send regular picture and letter updates to Debbie Robinson.

v. [Relators] will facilitate facetime and/ or skype calls between Debbie Robinson and the children one time per month.

. . .

3

13. The termination order will make clear that this Mediated Settlement Agreement is still in effect, and survives the termination and any subsequent adoption as to the parties to the post termination cause of action.

14. The parties agree and stipulate that the provisions of Texas Family Code Sec. 153.434, as well as any other statute which could be interpreted to prevent grandparental access after adoption will not be enforced. [Relators] are estopped from ever asserting such statutory provisions and estopped from ever asserting that the court lacks jurisdiction to make, modify or enforce such orders.

15. The parties stipulate that the orders are available under Texas Family Code Sec. 161.206(c) and 162.017(d). The grandparents will still be grandparents notwithstanding termination and adoption by [Relators]. That is, there is no termination of their status as grandparents.

16. In addition, the parties all stipulate that all the grandparents named in this agreement are entitled to grandparental access under Chapter 153, Subchapter H. The requirement of the grandparents to attach an affidavit setting forth facts per 153.432 is waived and, in any event, the parties all stipulate that the circumstances required (denial of possession or access would significantly impair the children's health or emotional wellbeing) exist.

. . .

**THIS AGREEMENT IS NOT SUBJECT TO REVOCATION ONCE SIGNED.**

The MSA contemplated that the parties would "re-set the merits for either September 18, 2017 or September 25, 2017," but the record does not reflect a hearing taking place at that time. Instead, the trial court held a hearing on February 1, 2018, and signed an order on February 6 terminating Mother's parental rights to the children. On February 16, 2018, the trial court entered an order granting Relators' petition for adoption. The MSA was on file with the trial court, but neither the termination order nor the adoption order mentioned the MSA,

4

nor did they reflect any of its terms, and the trial court did not enter any order on the MSA at that time. Nothing else was filed after the order granting adoption was entered.

The Weldons allege that Relators "outright denied [them] visitation of the children." As a result, the Weldons have not seen the children since the MSA was executed. Between the execution of the MSA and the end of 2024, Robinson visited with the children "at least twice annually," but she alleges that Relators "stopped all possession and access" beginning in December 2024. In March 2025, Relators "denied RPI Robinson possession and access, electronic contact, and other rights and privileges conferred upon her in the MSA." In June 2025, Robinson filed a Petition to Modify Parent-Child Relationship in which she sought entry of judgment on the MSA; she did not separately sue for breach of contract. She filed her petition under the same cause numbers associated with the termination and adoption orders. Relators filed a plea to the jurisdiction, asserting that Robinson lacked standing to bring her petition to modify. Robinson responded to the plea by asserting that she had standing pursuant to the MSA's provisions. In August, the Weldons filed a motion to enter, which asked the trial court to sign an "Agreed Order Granting Grandparent Possession and Access" based largely on the terms of the MSA. In September 2025, the grandparents filed a joint petition for grandparent possession or access. On October 30, 2025, the trial court heard Relators' plea to the jurisdiction and various other motions. At the hearing, the Weldons, like Robinson, urged that they had standing to pursue access to the children based on the terms of the MSA.[2] The trial court denied

---

[2] Relators' written plea to the jurisdiction was filed in response to Robinson's petition to modify, before the grandparents had filed their joint motion for possession and access. At the October 30 hearing, the grandparents all presented arguments as to their standing, and Relators argued against standing as to all grandparents. Relators note that this Court's "rulings with respect to the trial court's denial of [Relators'] plea to the jurisdiction would nevertheless be dispositive for both actions."

Relators' plea to the jurisdiction.

On November 7, 2025, the trial court heard the Weldons' motion to enter an order on the MSA. Relators again asserted that all grandparents lacked standing, and further argued that the circumstances had changed in the nearly eight years since the MSA had been signed such that the trial court should, before entering an order, appoint a guardian ad litem to protect the interests of the children, who were ages thirteen and ten at the time of that hearing. The trial court took the matter under advisement. Shortly after the hearing, Relators filed a request for temporary orders and motion to appoint a guardian ad litem for the children. Relators then sought mandamus relief in this Court on November 25, 2025, asking us to overturn the trial court's denial of their plea to the jurisdiction. They contend the grandparents lack standing and that the MSA could not confer standing on them at this point in time.

On January 6, 2026, the trial court entered an order granting grandparent possession and access (the grandparent-access order) closely mirroring the language of the MSA. At the same time, the trial court entered an order granting the motion to appoint a guardian ad litem and staying the grandparent-access order until further order of the trial court. Robinson has challenged this order by filing a separate original proceeding in this Court.

## STANDARD OF REVIEW

A writ of mandamus will issue if a trial court abuses its discretion and no adequate remedy by appeal exists. *In re C.J.C.*, 603 S.W.3d 804, 811 (Tex. 2020) (orig. proceeding). "A trial court abuses its discretion if it enters a void order, and mandamus will issue to remedy the void order regardless of whether the relator has an adequate remedy by appeal." *In re J.R.*, 622 S.W.3d 602, 604 (Tex. App.—Fort Worth 2021, orig. proceeding); *see*

6

*In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) ("[B]ecause the order was void, the relator need not show it did not have an adequate appellate remedy, and mandamus relief is appropriate."). "An order is void if it is entered when a court lacks subject-matter jurisdiction." *In re G.P.*, 665 S.W.3d 127, 131 (Tex. App.—Austin 2023, orig. proceeding). In addition, although a trial court's ruling on a plea to the jurisdiction is generally not subject to review by mandamus because an adequate remedy by appeal often exists, *Bell Helicopter Textron, Inc. v. Walker*, 787 S.W.2d 954, 955 (Tex. 1990), the Texas Supreme Court has granted relief to require a trial court to vacate orders erroneously permitting nonparents access to a child over a fit parent's objection, *In re C.J.C.*, 603 S.W.3d at 811 (citing *In re Derzapf*, 219 S.W.3d 327, 334–35 (Tex. 2007) (orig. proceeding) (per curiam)). Because divesting a fit parent of possession of his or her child is "irremediable," mandamus relief is appropriate. *Id.* (quoting *In re Derzapf*, 219 S.W.3d at 335).

We review the trial court's determination of standing, which is a component of subject-matter jurisdiction, de novo. *See Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005); *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 228 (Tex. 2004). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Suarez v. City of Tex. City*, 465 S.W.3d 623, 633 (Tex. 2015) (citing *Miranda*, 133 S.W.3d at 227). In addition to the pleadings, we may also consider relevant evidence and must do so when necessary to resolve the jurisdictional issues raised. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000).

7

**DISCUSSION**

Generally, "[a] biological or adoptive grandparent may request possession of or access to a grandchild by filing: (1) an original suit; or (2) a suit for modification . . . ." Tex. Fam. Code. § 153.432(a). To prevail, a grandparent must also meet certain statutory requirements, including executing and attaching "an affidavit on knowledge or belief that contains, along with supporting facts, the allegation that denial of possession of or access to the child by the petitioner would significantly impair the child's physical health or emotional well-being." *Id.* § 153.432(c). However, a grandparent

> may not request possession of or access to a grandchild if:
>
> (1) each of the biological parents of the grandchild has:
>
>> (A) died;
>>
>> (B) had the person's parental rights terminated; or
>>
>> (C) executed an affidavit of waiver of interest in child or an affidavit of relinquishment of parental rights . . . ; and
>
> (2) the grandchild has been adopted . . . by a person other than the child's stepparent.

*Id.* § 153.434. Here, the children's father has died, Mother's rights have been terminated, and the children have been adopted by people who were not either child's stepparent. Consequently, in the absence of the MSA's provisions, the grandparents would not have standing to seek possession of and access to the children.

The MSA's provisions sought to confer standing on the grandparents by agreeing that the "grandparents will still be grandparents notwithstanding termination and adoption by [Relators]"; "that the provisions of Texas Family Code Sec. 153.434, as well as any other statute

8

which could be interpreted to prevent grandparental access after adoption will not be enforced";
that "[Relators] are estopped from ever asserting such statutory provisions and estopped from
ever asserting that the court lacks jurisdiction to make, modify or enforce such orders"; and that
"the parties all stipulate that all the grandparents named in this agreement are entitled to
grandparental access under Chapter 153" without having to attach the required affidavit.
Relators and the grandparents center their arguments on whether an MSA that has not been
incorporated into an order can confer statutory standing by agreement.

The parties do not explain why none of them sought to have the trial court enter
an order on the MSA until 2025. The MSA itself specified that "Immediately following entry of
the Order Granting Adoption, Debbie Robinson, Nancy Weldon, David Weldon, and [Relators]
shall file a Joint Petition for Grandparent Access, and will seek an Agreed Final Order with the
terms and conditions contained herein." No one argues that any party to the MSA was unaware
of the entry of the order on termination or the subsequent adoption.[3] Relators offer that one
reason for the need for immediate entry was because at the time the MSA was entered into, the
grandparents would have had Relators' consent, thereby giving them standing to file suit under
section 102.006 of the Texas Family Code.

Without directly presenting arguments on the subject, the parties take different
positions on whether the underlying adoption order constitutes a "final order." Relators note in
their mandamus petition that Robinson did not specify what "prior order" her petition below
sought to modify, and they state that the adoption order was the "final order contained within the
cause [Robinson] filed into." The grandparents' responses emphasize the mandatory nature of

---

[3] The record reflects that Nancy Weldon, accompanied by counsel, attended at least part
of the termination hearing.

9

MSAs. Generally, a properly executed MSA is binding upon the parties. *See* Tex. Fam. Code § 153.0071(d). Subject to narrow exceptions that do not apply here, if an MSA meets the statutory requirements, a trial court must enter judgment on the agreement. *Id.* § 153.0071(e); *Highsmith v. Highsmith*, 587 S.W.3d 771, 775 (Tex. 2019) (per curiam); *see, e.g., Loya v. Loya*, 526 S.W.3d 448, 451 (Tex. 2017) (construing MSA as a contract and relying on Tex. Civ. Prac. & Rem. Code § 154.071(a)). The Weldons argue that because the MSA was executed before Mother's rights were terminated, they had "requested possession of and access to the children" at a time when they had standing as grandparents, and the subsequent termination and adoption did not divest them of standing. They also contend that Relators, having benefited from the MSA, "cannot now invoke a subsequent termination and adoption to avoid the very obligations they agreed the court should enforce."

We disagree. The execution of the MSA, absent a motion or petition asking the trial court to enter an order on the MSA, was not a request to the trial court seeking possession and access. *See Bowers v. Matula*, 943 S.W.2d 536, 539–40 (Tex. App.—Houston [1st Dist.] 1997, no writ) (noting grandparents had standing to request grandparent access where they filed their petition requesting access before a termination order or adoption order was in place); *cf. In re S.L.E.*, No. 04-19-00092-CV, 2020 WL 1866467, at *3 (Tex. App.—San Antonio Apr. 15, 2020, pet. denied) (mem. op.) (enforcing MSA providing grandparents access to child where MSA was referenced in termination order and holding that grandparents had standing under MSA to intervene in adoption proceeding). Nor may the Weldons rely on a theory of equitable or quasi-estoppel to confer jurisdiction where it does not already exist. *See In re H.G.*, 267 S.W.3d 120, 124 (Tex. App.—San Antonio 2008, pet. denied) ("Consequently, while equity may estop a party from relying on a mere statutory bar to recovery, it cannot confer jurisdiction

10

where none exists."); *see also In re Smith*, 262 S.W.3d 463, 466 (Tex. App.—Beaumont 2008, orig. proceeding) ("Estoppel does not operate to prevent the setting aside of a void order.").

Robinson asserts that "Passage of time, absent a final order, did not act to remove jurisdiction" that undisputedly existed when the MSA was executed. Her response to the plea to the jurisdiction argued that "the final order in cause no. D-l-FM-17-003669 did not dispose of all issues because the parties' MSA contemplated the modification of the final order in the same cause number." To be final, a judgment must fully dispose of all the issues and parties in a lawsuit. *Hinde v. Hinde*, 701 S.W.2d 637, 639 (Tex. 1985) (per curiam); *see In re R.R.K.*, 590 S.W.3d 535, 540 (Tex. 2019) ("A judicial decree is final when it disposes of all issues and all parties in the record."). "[A] judgment which settles all the legal issues and rights between the parties is final and appealable 'though further proceedings may be necessary in the execution of it or some incidental or dependent matter may still remain to be settled.'" *Hinde*, 701 S.W.2d at 639 (quoting *Hargrove v. Insurance Invs. Corp.*, 176 S.W.2d 744, 747 (Tex. 1944)). "Because a court order need not be in any particular form, 'whether a judicial decree is a final judgment must be determined from its language and the record in the case.'" *In re R.R.K.*, 590 S.W.3d at 540 (quoting *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205–06 (Tex. 2001)). "When an order 'finally disposes of all claims and all parties' in 'clear and unequivocal language,' it is a final order." *Id.* (quoting *In re Elizondo*, 544 S.W.3d 824, 827–28 (Tex. 2018) (per curiam)). "If, however, an order's finality is not 'clear and unequivocal,' then a reviewing court must examine the record to determine whether the trial court intended the order to be final." *Id.*

Here, although the adoption order contains a "Mother Hubbard" clause, it does not state that it is final, that it disposes of all claims and parties, or that it is appealable. *See id.* But a review of the record shows that, aside from the petition for adoption, no claims were

11

pending in the trial court at the time the adoption order was entered. The only parties to the adoption proceeding were Relators. The grandparents did not intervene or otherwise seek relief from the trial court before or during the pendency of the termination and adoption, and they did not seek any relief from the trial court after entry of the adoption order until 2025. As a result, the adoption order addressed all claims and all parties before it at the time it was entered. We accordingly conclude that it was a final order.

The trial court signed the adoption order on February 16, 2018. The trial court's plenary power expired thirty days after the judgment was signed, in March 2018. *See* Tex. R. Civ. P. 329b(d). Although the trial court retained continuing, exclusive jurisdiction over the case, that continuing and exclusive jurisdiction did not alter the court's plenary power. *See In re M.V.*, No. 01-15-01058-CV, 2016 WL 2744945, at *3 (Tex. App.—Houston [1st Dist.] May 10, 2016, no pet.) (mem. op.); *In re Marriage of Cobb*, No. 07-23-00311-CV, 2024 WL 3448486, at *2 (Tex. App.—Amarillo July 17, 2024, no pet.) (mem. op.); *see also In re M.A.S.*, 233 S.W.3d 915, 925 (Tex. App.—Dallas 2007, pet. denied). Once the trial court's plenary power expired, the grandparents could seek access through an original suit or a suit for modification. *See* Tex. Fam. Code §§ 153.432 (suit for possession or access by grandparent), 156.101(a) (grounds for modification). A petition seeking a modification in a suit affecting the parent-child relationship is considered a separate lawsuit. *In re S.V.*, No. 05-18-00037-CV, 2019 WL 516730, at *6 (Tex. App.—Dallas Feb. 11, 2019, no pet.) (mem. op.).

In *Interest of C.T.H.*, our sister court of appeals determined that grandparents who entered into an MSA in a 2012 divorce proceeding for which final order was entered in 2016 lacked standing to seek access to their grandchildren in a subsequent modification proceeding. No. 05-22-1202, __ S.W.3d __, 2025 WL 3285467, at *7 (Tex. App.—Dallas Nov. 25, 2025, no

12

pet. h.).  Like the grandparents in this case, the *C.T.H.* grandparents did not seek to enter an order

on the MSA until after the trial court entered a final order and the trial court's plenary power

expired.  *Id.*  The court of appeals explained,

> Grandparents rely on § 153.0071, *Lee*, and our opinion in [*In re D.G.M.*, No. 05-22-00049-CV, 2023 WL 5030186 (Tex. App.—Dallas Aug. 8, 2023, no pet.) (mem. op.)] to show they are entitled to judgment on the 2012 MSA.  *Lee* and *D.G.M.* are distinguishable.  In both cases, the plenary power of the trial court had not expired at the time the party sought judgment on the MSA.  *See Lee*, 411 S.W.3d at 447–48; *D.G.M.*, 2023 WL 5030186 at *2.  Here, the trial court lacked plenary power to grant Grandparents' request for judgment on the MSA in the modification proceeding.

*Id.*

In rejecting the argument that section 153.0071 of the family code requires a trial

court to enter judgment on an MSA after its plenary power has expired, the *C.T.H.* court

explained, "The policy behind § 153.0071 is to bring custody battles to an end and stop the

overwhelming emotional and financial burdens that such a case places upon a family."  *Interest*

*of C.T.H.*, 2025 WL 3285467, at *8 (citing *Lee*, 411 S.W.3d at 450–51).  We likewise conclude

that section 153.0071 did not empower the trial court to enter an order on an MSA after its

plenary power had expired.  *See Interest of S.D.*, No. 05-18-00809-CV, 2018 WL 6427646, at *6

(Tex. App.—Dallas Dec. 7, 2018, pet. denied) (mem. op.) (mother lacked standing to bring

motion to enforce MSA after order terminating her parental rights became final and she neither

appealed nor raised her complaint while the trial court retained plenary power); *Burkett v.*

*Burkett*, No. 13-18-00385-CV, 2019 WL 3331635, at *7 (Tex. App.—Corpus Christi–Edinburg

Jul. 25, 2019, pet. denied) (mem. op.) (holding, in proceeding where husband challenged

judgment that deviated from MSA, that "[b]ecause no party timely appealed the 2016 Order, and

because plenary power over that order has since expired, that order cannot now be challenged by

collateral attack."). Because the trial court's plenary power had expired, the orders it has entered since the expiration of its plenary power are void. *See Mapco, Inc. v. Forrest*, 795 S.W.2d 700, 703 (Tex. 1990). The trial court lacked discretion to take any action other than dismissing the grandparents' suit. Its entry of orders therefore constituted an abuse of discretion. Because the trial court's orders are void, mandamus is warranted. *See In re J.R.*, 622 S.W.3d at 604.; *see also Proffer v. Yates*, 734 S.W.2d 671, 673 (Tex. 1987) (orig. proceeding) (providing that justice "demands a speedy resolution" in suits affecting parent-child relationships).

## CONCLUSION

Having concluded that the trial court abused its discretion by entering orders after the expiration of its plenary power, we conditionally grant mandamus relief. We direct the district court to vacate its void orders and dismiss the grandparents' suit. The writ will issue only if the district court does not take action in accordance with this opinion. We dismiss as moot Relators' emergency motion to stay the trial court proceedings.

_____

Rosa Lopez Theofanis, Justice

Before Justices Triana, Kelly, and Theofanis

Filed: April 1, 2026

14